4 P.3d 980

**In re CESAR R.**

**No. 2 CA–JV 99–0034.**

Court of Appeals of Arizona,
Division 2, Department A.

Nov. 30, 1999.

Review Denied May 22, 2000.*

* Vice Chief Justice Jones voted to grant review.

**438**

Barbara LaWall, Pima County Attorney by Thomas Weaver, Jr., Tucson, for State.

Susan A. Kettlewell, Pima County Public Defender by Anthony Payson II, Tucson, for Minor.

## OPINION

DRUKE, Judge.

¶ 1 The minor in this appeal fired four shots into the air in a residential neighborhood located in Pima County, Arizona. After a hearing, the juvenile court adjudicated him delinquent on one count of a minor in possession of a firearm, under A.R.S. § 13–3111, and one count of disorderly conduct, under A.R.S. § 13–2904(A)(6). The court placed him on juvenile intensive probation and ordered him to complete fifty hours of community service and pay a $100 fine. The issue we address in this opinion is the minor's challenge to the constitutionality of § 13–3111. By separate memorandum decision,[1] we address his claim that the state presented insufficient evidence to support his adjudication for disorderly conduct.

¶ 2 Section 13–3111 prohibits "an unemancipated person who is under eighteen years of age ... [from] knowingly carry[ing] or possess[ing] ... a firearm in any place that is open to the public or on any street or highway...."[2] The statute specifically exempts, however, those who are fourteen years of age or older and engaged in certain activities, such as "lawful hunting or shooting events or marksmanship practice at established ranges."[3] When the legislature enacted § 13–3111, it made several findings. Among them, it found that

> [t]he subject of minors carrying, possessing or transporting firearms is a matter of statewide concern and that state law must continue to preempt local ordinances on the subject.... [T]he state reaffirms that laws on this subject must continue to be uniform so that minors have a fair opportunity to know the rules, the act of crossing a city boundary will not inadvertently subject a minor to criminal penalties and all citizens in this state can have full confidence that they are fully protected by the same law.[4]

Nevertheless, under subsection H of the statute, the legislature limited its application to "counties with populations of more than five hundred thousand persons." The minor argues that as a result of this limitation, § 13–3111 only applies to Pima and Maricopa Counties, and thus, constitutes special or local legislation in violation of article IV, part 2, § 19, of the Arizona Constitution. We agree.

¶ 3 Article IV, part 2, § 19(7) of our constitution prohibits the enactment of local or special laws involving the "[p]unishment of crimes and misdemeanors." In *State Compensation Fund v. Symington*,[5] our supreme court stated that this constitutional prohibi-

---

**1.** *See* Ariz. R.P. Juv. Ct. 24(g), 17B A.R.S.; Ariz. R. Civ.App. P. 28(g), 17B A.R.S. Note: Only authorities, not text, appear in the footnotes of this opinion.

**2.** A.R.S. § 13–3111(A).

**3.** § 13–3111(B).

**4.** 1993 Ariz. Sess. Laws, ch. 259, § 2(A)(4).

**5.** 174 Ariz. 188, 192, 848 P.2d 273, 277 (1993). *See also Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977).

tion prevents "the legislature from providing benefits or favors to certain groups or localities." The court added:

> Such a prohibition also "confine(s) the power of the legislature to the enactment of general statutes conducive to the welfare of the state as a whole, to prevent diversity of laws on the same subject, to secure uniformity of law throughout the state as far as possible, and to prevent the granting of special privileges." In addition, it "prevents the enlargement of the rights of persons in discrimination against others' rights...." [6]

■ ¶ 4 To determine whether a statute violates article IV, part 2, § 19 of the constitution, we use the following three-prong test enunciated by the supreme court in *Republic Investment Fund I v. Town of Surprise:* [7] Whether the statutorily created classification has a "rational relationship to a legitimate legislative purpose"; whether the classification "encompasses all members of the relevant class"; and "whether the class is elastic, allowing members to move into and out of the class." We review de novo whether the statute satisfies this three-prong test. [8] And, even though we generally defer to the legislature's determination of policy, we "will not refrain from declaring a legislative act an unconstitutional special or local law when the facts so require." [9]

### Rational Basis for Statute

¶ 5 The first prong of the test requires us to determine whether a rational basis exists for § 13–3111. As noted above, the legislature made certain findings when it enacted the statute. In two, the legislature found that "[a] minute number of [minors] disproportionately threaten the public peace through their unlawful use or threatening exhibition" of firearms and that "[a] minority

of parents or guardians have not exercised appropriate authority over or responsibility for their minor's possession of firearms." [10] We believe these findings establish a legitimate legislative purpose for § 13–3111: regulating a minor's possession and use of firearms.

### Inclusiveness of Classification

■ ¶ 6 Under the second prong, which overlaps the first, [11] we examine the inclusiveness of the classification created by the statute. This does not mean the statute must apply to "every person, place, or thing within the state; however, it must apply uniformly to all cases and to all members within the circumstances provided for by the law." [12] The state maintains that § 13–3111 satisfies this second prong because the statute applies to "all juveniles" in the two most populated counties. The minor counters that even if this is true, "it is completely irrational to make this statute only applicable in Maricopa and Pima Counties." We agree, especially given the express legislative findings that the possession and use of firearms by minors "is a matter of statewide concern," that "laws on this subject must ... be uniform so that minors have a fair opportunity to know the rules," and that "all citizens in this state ... are fully protected by the same law." [13]

■ ¶ 7 The state nonetheless asserts that § 13–3111 properly focuses on Pima and Maricopa Counties because "the problems of youth gun violence are most prevalent" there. The state argues that one can "infer that higher populated counties [contain] urban areas where juvenile street gangs are more likely to exist" and thus "experience a higher rate of juvenile gun-related crime than less populated counties." The state's argument, however, rests upon an inference

---

6. *Symington*, 174 Ariz. at 192, 848 P.2d at 277, quoting 82 C.J.S. Statutes § 155 (1953) (footnotes omitted by supreme court).

7. 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990).

8. *City of Tucson v. Woods*, 191 Ariz. 523, 959 P.2d 394 (App.1997).

9. *Republic Investment*, 166 Ariz. at 148, 800 P.2d at 1256.

10. 1993 Ariz. Sess. Laws, ch. 259, § 2(A)(2) and (3).

11. *See Woods*.

12. *Republic Investment*, 166 Ariz. at 150, 800 P.2d at 1258.

13. 1993 Ariz. Sess. Laws, ch. 259, § 2(A)(4).

we cannot adopt. First, the legislative findings noted above do not reasonably support such an inference. Second, although an appellate court may take judicial notice of a fact, it "must be so notoriously true as not to be subject to reasonable dispute." [14] Here, we cannot indisputably say that "juvenile street gangs are more likely to exist" in the urban areas of Pima and Maricopa Counties and that, as a result, those counties have "a higher rate of juvenile gun-related crime." And, even if we did take judicial notice of these purported facts, we cannot say § 13–3111 rationally applies to the vast rural areas of these two counties but not to the equally vast rural areas of Arizona's remaining thirteen counties.

## Statute's Elasticity

■ ¶ 8 Finally, we must analyze the elasticity of the statutorily created class. Sufficient elasticity exists if the classification not only "admits entry of additional persons, places, or things attaining the requisite characteristics, but also [enables] others to exit the statute's coverage when they no longer have those characteristics." [15] In our analysis, we "consider the actual probability that others will come under the act's operation when the population changes. Where the prospect is only theoretical, and not probable, we will find the act special or local in nature." [16]

¶ 9 In this case, we find the outlook theoretical, at best, that Pima and Maricopa Counties will exit the class established by § 13–3111. Based on the census figures submitted to the juvenile court, we find it highly improbable that either county will ever have populations of less than 500,000 people. Those figures show that both counties had populations greater than 500,000 in 1980 and that their populations have grown substantially since then.

¶ 10 The same census figures also suggest it is quite unlikely that other counties will

soon enter the class. The figures show that from 1990 to 1996, the average population increase for the other thirteen counties ranged from 4.7 percent for La Paz County to 35.1 percent for Mohave County. And, notwithstanding Mohave County's significant increase in population, it still had fewer than 127,000 residents in 1996. Also, even if we assume its growth remains constant, Mohave County's population will not exceed 500,000 for more than ten years. Other counties would, of course, require much longer periods to qualify, if ever.

¶ 11 In conclusion, although the legislature expressly enacted § 13–3111 to address a "statewide concern," subsection H of the statute limits its application to Pima and Maricopa Counties and makes improbable entry and exit by the other counties. The statute thus constitutes a special or local law and violates article IV, part 2, § 19(7) of the Arizona Constitution.

■ ¶ 12 The state nonetheless argues that even if we find § 13–3111 unconstitutional, we can save it by severing subsection H. However, as Division One of this court stated in City of Tucson v. Woods,[17] "[u]nless we can conclude that the legislature would have enacted the valid portion of the statute absent the invalid provision, we must invalidate the entire statute."

¶ 13 The severance of subsection H would, of course, result in the statewide application of § 13–3111. This would conform the statute to the legislature's desire to protect "all citizens in this state ... by the same law." [18] Yet, the legislature expressly limited the statute's application to Pima and Maricopa Counties when it enacted § 13–3111 by specifically including subsection H. Moreover, subsection H also provides: "Counties with populations of less than five hundred thousand persons according to the most recent decennial census, or cities or towns within those counties, may adopt an ordinance identical to this section." This provision further

---

14. Morris K. Udall et al., *Arizona Law of Evidence* § 151, at 327 (3d ed.1991) (footnote omitted).

15. *Republic Investment*, 166 Ariz. at 150, 800 P.2d at 1258.

16. *Id.* at 151, 800 P.2d at 1259.

17. 191 Ariz. at 531, 959 P.2d at 402.

18. 1993 Ariz. Sess. Laws, ch. 259, § 2(A)(4).

evidences a legislative intent that § 13–3111 not apply statewide. Counties having populations of 500,000 or less, or their municipalities, must affirmatively adopt an ordinance identical to § 13–3111 before it applies to them. Were we to sever subsection H, the statute's remaining provisions would automatically apply to all counties, cities, and towns in Arizona. Because we believe this would contravene legislative intent, we conclude that the legislature would not have enacted the statute without subsection H. We thus decline to sever subsection H from § 13–3111 and, therefore, invalidate the entire statute.

¶ 14 Accordingly, we vacate the juvenile court's finding that the minor violated § 13–3111. But, for the reasons set forth in our separate memorandum decision, we affirm the juvenile court's order adjudicating the minor delinquent.

CONCURRING: JOHN PELANDER, Presiding Judge, and M. JAN FLÓREZ, Judge.